IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TAL RUSAK,

    Plaintiff,

v.

APSTRA, INC., a Delaware corporation, and
DOES 1 through 10,

    Defendants.

No. C 18-04190 WHA

**ORDER RE MOTION
FOR LEAVE TO AMEND**

## INTRODUCTION

In this employment-discrimination action, plaintiff moves for leave to amend his complaint. For the reasons explained below, the motion is **GRANTED**.

## STATEMENT

Plaintiff Tal Rusak received a bachelor's degree in computer science from Cornell University and a master's degree in computer science from Stanford University. In November 2014, defendant Apstra, Inc. hired plaintiff as a software engineer. Plaintiff had recently left his previous job after employees there spread rumors that plaintiff suffered from "bipolar disorder, stress, anxiety, and/or other disorders unknown to [p]laintiff." Eitan Joffe, a colleague from plaintiff's former company, later joined Apstra and was promoted to a management position on the company's leadership team. Noting plaintiff's success at Apstra, Joffe began to spread the same rumors regarding plaintiff's perceived mental illness. Shortly thereafter, and despite plaintiff's positive work performance, coworkers and managers began to leave plaintiff off of

work communications and cut him out of meetings. Plaintiff's work environment became hostile (Dkt. No. 28-1 ¶¶ 13–35).

Joffe expressed concerns to Mansour Karam, Apstra's CEO, who in turn expressed concerns to David Cheriton, Apstra's founder. Cheriton then decided to terminate plaintiff, "referencing in an email his concerns about" plaintiff's perceived mental illness. A couple of weeks later, plaintiff receiving a warning letter regarding his work performance. The warning letter was a set up for failure and soon he was fired. The real reason Apstra let him go was that no one wanted to work with plaintiff "given his difficult personality which they erroneously and ignorantly attributed to mental illness." Because Apstra realized they could not terminate an employee for exhibiting symptoms of a mental disability, the company instead manufactured performance issues. Plaintiff complained to human resources about this allegedly discriminatory conduct in July 2015. Immediately afterwards, Apstra terminated plaintiff from the company (*id.* ¶¶ 35–55).

Plaintiff interviewed for new positions after his termination from Apstra but could not find subsequent employment. Although plaintiff's initial contacts with two different companies were positive, the companies' respective CEOs rejected plaintiff's application after contacting Apstra and discussing plaintiff's perceived mental illness (*id.* ¶¶ 56–62).

Plaintiff initiated this action in state court in June 2018, asserting claims under California and federal law. Apstra removed the case to this district and moved to dismiss and for judgment on the pleadings. After an August 23 order concluded that plaintiff could not proceed anonymously, plaintiff timely filed an amended complaint identifying himself. An order dated September 5 granted in part Apstra's motion to dismiss and gave plaintiff the opportunity to seek leave to amend. Plaintiff now moves for leave to amend and submits a proposed amended complaint (Dkt. Nos. 1, 9, 25–28). The order follows full briefing and oral argument.

**ANALYSIS**

FRCP 15(a)(2) advises, "The court should freely give leave when justice so requires." In ruling on a motion for leave to amend, courts consider: (1) bad faith, (2) undue delay, (3)

2

1  prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has
2  previously amended their complaint. Futility alone can justify denying leave to amend. *Nunes*
3  *v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). For purposes of assessing futility on this
4  motion, the legal standard is the same as it would be on a motion to dismiss under FRCP
5  12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Apstra argues that
6  leave to amend should be denied because plaintiff's proposed amendments would be futile.

### 1. DISABILITY DISCRIMINATION UNDER THE FEHA AND THE ADA.

Under the ADA an employee is considered disabled if he is regarded by his employer as having a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(C). While the term "mental impairment" is not defined in the ADA, ADA regulations indirectly define this phrase to include "emotional or mental illnesses." 29 C.F.R. §§ 1630.2(g)(2), (h)(2). The FEHA similarly protects individuals perceived as having a physical or mental disability, defining "mental disability" as "[h]aving any mental or psychological disorder or condition, such as intellectual disability, organic brain syndrome, emotional or mental illness, or specific learning disabilities, that limits a major life activity." Cal. Gov't Code §§ 12926(j)(1), 12926.1.

The September 5 order dismissed plaintiff's disability-discrimination claims for plaintiff's failure to allege the nature of his perceived disability. Plaintiff's proposed amended complaint, by contrast, alleges that Apstra's managers and employees perceived plaintiff has having "bipolar disorder, stress, anxiety, and/or other conditions unknown to Plaintiff." True, plaintiff's complaint alleges that a prior employer (not Apstra) misperceived plaintiff's "intensity and focus" as "anxiety, agitation or excessive stress around significant work deadlines." But the proposed complaint also alleges that rumors eventually circulated, both at plaintiff's prior employer and at Apstra, that plaintiff suffered from bipolar disorder (Dkt. No. 28-1 ¶¶ 17, 19, 30). These allegations sufficiently allege that plaintiff qualifies for FEHA and ADA protection. Even if stress and anxiety are not qualifying disabilities, bipolar disorder certainly is. Indeed, bipolar disorder is explicitly listed as a qualifying disability under the FEHA. Cal. Gov't Code § 12926.1(c).

3

This order agrees with defendant, however, that plaintiff is waffling in his allegation that his perceived disability was "bipolar disorder, stress, anxiety, *and/or* other disorders unknown to the Plaintiff" (Dkt. No. 28-1 ¶ 19) (emphasis added). At the hearing, plaintiff's counsel agreed to strike plaintiff's allegation that his perceived disability included "stress, anxiety, and/or other disorders unknown to Plaintiff," and to instead clearly allege that plaintiff's perceived disability was bipolar disorder. Accordingly, although this order ultimately grants plaintiff's motion for leave to amend his disability-discrimination claims for the reasons explained, this amendment is granted on the condition that plaintiff make the agreed upon changes described above.

Plaintiff has also sufficiently alleged that Apstra terminated him because of his perceived mental illness. In determining the legal sufficiency of a claim, a court must take all well-pled allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The proposed amended complaint alleges that after Cheriton (Apstra's founder) spoke with CEO Karam, Cheriton decided to terminate plaintiff and specifically referenced concerns about plaintiff's perceived mental illness. The proposed complaint further alleges that CEO Karam "concurred" regarding plaintiff's termination and that Apstra manufactured fake performance issues after realizing that the company could not terminate an employee for exhibiting symptoms of a mental disability (Dkt. No. 28-1 ¶¶ 40, 46). Plaintiff has accordingly alleged enough facts to support his disability-discrimination claims.

Contrary to Apstra, plaintiff's statements to the EEOC do not contradict or undercut these allegations. According to documents produced by the EEOC, plaintiff stated during an intake interview that there was no evidence that CEO Karam knew about plaintiff's perceived mental illness at the time Apstra hired him. The interview notes are silent, however, as to what CEO Karam knew when he terminated plaintiff nearly eight months later (Dkt. No. 32-5). Accordingly, even if this order could consider plaintiff's statements to the EEOC in determining whether the proposed complaint states a claim, they would not bear on the adequacy of the complaint's allegations.

Similarly unconvincing is Apstra's argument that plaintiff's complaint "affirmatively misstates the facts" (Opp. at 5 n.4). Again, in evaluating plaintiff's claims at this stage of the litigation, this order must accept all well-pled factual allegations as true. *Iqbal*, 556 U.S. at 678. Because this order does not rely on the exhibits attached to Apstra's opposition brief, plaintiff's evidentiary objections and motion to strike are **DENIED AS MOOT**. Plaintiff's request to amend his first and second claims for disability discrimination under the FEHA and the ADA is **GRANTED**, subject to the condition described above.

This order recognizes that an employer need not keep on the payroll any employee who cannot do the job. If his or her inadequate performance is due to mental illness (or a perceived mental illness), then an accommodation might (or might not) be in order. Otherwise, an unqualified employee who fails to perform may be fired.

**2.   SECTIONS 1050 AND 1054 OF THE CALIFORNIA LABOR CODE.**

Section 1050 of the California Labor Code provides:

> Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor.

Section 1054, in turn, authorizes treble damages in a civil action for a violation of Section 1050. The September 5 order found that the complaint failed to state a claim under Sections 1050 and 1054 because plaintiff had omitted any facts concerning the recipient, speaker, or content of the alleged misrepresentations. Plaintiff's proposed amended complaint adequately fixes this deficiency and specifically alleges recipients of the misrepresentations — for example, Bipul Sinha of Rubrik and Jason Forrester of Snaproute — and the subject of the misrepresentations — plaintiff's perceived mental illness. Plaintiff further alleges that despite extensive experience in his field and positive interviews or communications with these companies, these prospective employers rejected him after speaking with Apstra about plaintiff's perceived mental illness (Dkt. No. 28-1 ¶¶ 56–62). Plaintiff's motion to amend his claims under Sections 1050 and 1054 is **GRANTED**.

5

**3. RETALIATION UNDER THE FAIR EMPLOYMENT AND HOUSING ACT.**

In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law. Exhaustion in this context requires filing a written charge with the Department of Fair Employment and Housing (DFEH) within one year of the alleged unlawful employment discrimination and obtaining notice from DFEH of the right to sue. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001) (citation omitted).

Apstra terminated plaintiff in July 2015. Although plaintiff originally claimed to have exhausted his administrative remedies through his August 2016 complaint with the EEOC, plaintiff later argued that he filed a charge via an intake questionnaire he submitted in May 2016. As noted in the September 5 order, Apstra did not dispute that the questionnaire constituted a written charge. Rather, Apstra argued (and the September 5 order agreed) that because the questionnaire did not explicitly claim retaliation by Apstra, plaintiff nevertheless failed to exhaust his administrative remedies as to his FEHA retaliation claims.

Plaintiff now argues that his May 2016 questionnaire should be construed to include a claim for retaliation. Upon further consideration, this order agrees. The exhaustion requirement can be met outside the administrative complaint through facts that "might [have been] uncovered by a reasonable [DFEH] investigation." *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 268 (2009). In *Baker v. Children's Hospital Medical Center*, 209 Cal. App. 3d 1057, 1065 (1989), for example, a California appellate court allowed the plaintiff to pursue claims not included in his DFEH charge where the subsequent claims were "like or reasonably related to" the claim made to the DFEH. Specifically, *Baker* held that the FEHA complainant could bring suit for discriminatory retaliation following the filing of an internal grievance even though retaliation was not asserted in the administrative charge. The court concluded that the complainant's retaliation claim was not barred by the exhaustion doctrine because it was "reasonable that an investigation of the allegations in the original DFEH complaint would lead to the investigation of subsequent discriminatory acts undertaken by respondents in retaliation for appellant's filing an internal grievance." *Ibid.* So too here.

Plaintiff's questionnaire referenced a complaint of discrimination he made to human resources, stated that CEO Karam "pre-judged" and "disagreed with" the complaint, and alleged that during the same conversation CEO Karam fired plaintiff. It is reasonable to expect that a DFEH investigation into the allegations raised in plaintiff's May 2016 questionnaire would have led to investigation into acts allegedly undertaken by Apstra in retaliation for plaintiff's internal complaint. This order accordingly agrees that plaintiff has sufficiently pled that he exhausted his administrative remedies with respect to his retaliation claims. Plaintiff's motion to amend these claims is **GRANTED**. Plaintiff should bear in mind that he has the burden to both plead *and* prove timely exhaustion of administrative remedies. *Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345 (2014).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to amend is **GRANTED**. Plaintiff shall file an amended complaint, making the changes allowed above but adding nothing more, by **NOVEMBER 2 AT NOON**. The answer is due by **NOVEMBER 16 AT NOON**. There shall be no further Rule 12 practice.

**IT IS SO ORDERED.**

Dated: October 29, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7